CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 21 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

TERRANCE HENDERSON,                )
      Plaintiff,                          )    **Civil Action No. 7:06cv00408**
                           )
v.                                 )    **MEMORANDUM OPINION**
                           )
COMMONWEALTH OF VA, et al.,         )    **By: Hon. Glen E. Conrad**
      Defendants.                         )    **United States District Judge**

Proceeding pro se, plaintiff Terrance Henderson brings this civil rights complaint pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Plaintiff, an inmate in the segregated housing unit ("SHU") at Red Onion State Prison ("ROSP") in Pound, Virginia, sets forth six claims alleging that 29 defendants[1] employed at ROSP violated his constitutional rights. The case is before the court on defendants' motions to dismiss and for summary judgment, which are ripe for disposition.[2, 3] For the reasons that follow, the court will grant defendants' motions.

## I. Factual Background

The claims plaintiff raises in the instant suit arise from four separate events. The first event occurred on October 7, 2005, when plaintiff threw feces on two prison guards when they came to return him to his cell after his allotted period in the recreation yard. Although plaintiff complains

---

[1] Plaintiff named the Commonwealth of Virginia as a defendant. A state is not a "person" within the meaning of 42 U.S.C. § 1983; therefore, the Commonwealth is not an appropriate defendant in this suit. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Additionally, plaintiff sued the defendants in both their official and individual capacities for acts he alleges defendants committed under color of state law. However, insofar as defendants are sued in their official capacities, they are immune from suit. Id.

[2] As further noted herein, infra n.10, n.34, the claims against three defendants upon whom the court has been unable to complete service will be dismissed, pursuant to 28 U.S.C. § 1915(e)(2), for failure to state a claim upon which relief may be granted.

[3] To the extent plaintiff's complaint could be construed to assert claims under state law, the court will decline, pursuant to 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over such claims and will dismiss them without prejudice.

to the court that he did not throw the feces on the guards as alleged, evidence that plaintiff has filed with the court indicates that, when resorting to ROSP's administrative remedies system regarding the disciplinary proceedings that followed the incident, plaintiff explicitly admitted to throwing the feces on the guards.

Three of plaintiff's claims arise from this feces-throwing incident. First, plaintiff claims that, as retaliation for the assault involving the throwing of the feces, he was denied the opportunity to participate in Ramadan during the period of October 5, 2005 through November 4, 2005. Second, he claims that he was placed in ambulatory restraints and was denied five meals during the period from October 7, 2005 to October 9, 2005, and that the denial of these meals was intended as retaliatory punishment for assaulting the two correctional officers with the feces. Third, he states that he is guilty of throwing feces on the guards, but claims that, as a result of the disciplinary hearings that followed the feces-throwing incident, he was improperly found guilty of the destruction of state property and required to pay restitution and deprived of his recreation privileges.

Plaintiff's fourth claim arises from a complaint regarding dental treatment. Plaintiff alleges that, in March 2005, he broke a tooth, and that Dr. Bailey, the institutional dentist, has refused to repair the broken tooth and treat other dental problems. Plaintiff's fifth claim arises from his allegation that, on February 19, 2006, he ingested some broken glass with a meal. Plaintiff alleges that he was denied appropriate medical treatment when he believed he had swallowed shards of glass. Plaintiff's sixth claim arises from a cell search on November 27, 2005. Plaintiff alleges that, in the course of that search, certain personal property was taken from him.

Because plaintiff sets forth six distinct claims, each with its own history of plaintiff's resort

2

to the prison administrative remedy system,[4] and because of the temporal and factual distinctions between the claims, the court will discuss separately the facts of each claim, the motions defendants have filed in response to each claim, and the attendant legal analysis of each claim.

## II.  Standards of Review

### A.  Motion for Summary Judgment

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  Rule 56(c) mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex v. Catrett, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists if reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in his favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the non-moving party may not rest on the mere allegations or denials of the pleadings. Rule 56(e).  Instead, the non-moving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find for either side.  Anderson, 477 U.S. at at 256-57.

---

[4] Plaintiff's complaint, submissions of additional evidence, and motions for summary judgment and partial summary judgment total 166 pages, excluding procedural motions and motions for discovery.

Case 7:06-cv-00408-GEC-mfu   Document 107   Filed 09/21/07   Page 3 of 39   Pageid#: 649

## B. Motion to Dismiss

Dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure is limited to "the extraordinary case where the pleader makes allegations that show on the face of the complaint some insuperable bar to relief." Browning v. Vecellio & Grogan, Inc., 945 F. Supp. 930, 931 (W.D. Va. 1996) (internal quotation omitted). When "considering a motion to dismiss, the court should accept as true all well-pleaded allegations" and construe those allegations in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). While the complaint need not provide detailed factual allegations, the basis for relief in the complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). Assuming the factual allegations in the complaint are true, they "must be enough to raise a right to relief above the speculative level." Id.

## III. Claim 1

Plaintiff's first claim is that he was denied participation in the Ramadan fast during the period of October 5, 2005 through November 4, 2005.[5] He alleges that, beginning on October 7, 2005, he was denied his pre-sunrise and post-sunset Ramadan meals as retaliation for "a verbal altercation" he had with officers Cox and Bartee. He states that he was able to fast on his own by saving food from his non-Ramadan meals, but that the food often spoiled and became inedible. He further alleges that correctional officers verbally harassed him because he had thrown feces on two guards, and that this harassment "made my attempt to celebrate Ramadan difficult. . . ." Plaintiff

---

[5] Observant Muslims fast between dawn and sunset during the thirty days of Ramadan, the Islamic holy month of fasting and prayer. See Lovelace v. Lee, 472 F.3d 174, 182 (4th Cir. 2006)

4

states that "the month of Ramadan became a stressful time for me when it should have been a time where I was at peace with myself and my surroundings." In plaintiff's view, his First Amendment "right to 'freely exercise my religious beliefs without fear of punishment' [sic] was violated."

Plaintiff filed an inmate grievance regarding the alleged retaliatory denial of the Ramadan meals, stating that he wanted "monetary damages" for the violation of his constitutional rights, and that he wanted "the staff involved [to be] disciplined," "a transfer to a place where [he does] not have to fear being discriminated against or retaliated against," and "an opportunity to participate in Ramadan . . . for 30 days." The Warden's Level I response to plaintiff's grievance, dated December 7, 2005, summarized the documentary evidence and stated, in pertinent part:

> **Grievance Summary:** You stated you were refused your Ramadan meals on October 7, 8, 9, 12, 13, 17, 18, 21, 23, 24, 26, 27, [and] 31, and November 1, 2, [and] 4. You stated this denied you participation in Ramadan. This was retaliation by Officers J.N. Mullins, S. Powers, Ramey, Crabtree, Welch, Sgt. O'Quinn, Sgt. Deel, Lt. Rose, and kitchen staff B. Hubbard. You did not ask to be removed from Ramadan.

> **Informal Summary:** Your informal complaint, responded to by Sgt. S. Deel[,] stated ["]when I called the kitchen and talked to the supervisor they explained to me that you had been removed from Ramadan. You need to write to Ms. McKnight to find out why.["] You attached an informal complaint where you wrote the kitchen and B. Hubbard stated your name has been added back to the Ramadan list as of October 25, 2005.

> You were interviewed regarding this complaint on November 16, 2005, by Sgt. Tate.

> **Investigation:** It appears that your [sic] received meals on the above noted dates, but they were not Ramadan meals. There was no noted reason for your removal. It appears this was done in error. No one has any knowledge as to why you were removed. You were placed back on the Ramadan list on October 25, 2005.

> * * *

> This grievance is **<u>FOUNDED</u>**, as there has been incorrectly applied procedure of this policy. In the future every effort will be made to see that unless you specifically request to have your name removed from the Ramadan list, there will not be any

5

changes. This was noted on October 25, 2005.

Dissatisfied with this outcome in his favor, plaintiff appealed the Level I response to his grievance, stating that he "was removed from Ramadan for no reason" and that he believed his removal from the Ramadan list was retaliatory because it commenced on October 7, 2005, "the day that there was an altercation with R.O.S.P. staff. . . ." He complained that he did not receive any of the remedies that he had asked for, that "throughout the celebration of Ramadan [he should have been] at peace with [himself] and [his] surroundings," but that he was unable to obtain that peacefulness or to "recieve [sic] the blessings that one recieves [sic] by celebrating Ramadan." He stated that he "suffered mentally [and] emotionally" and that, "due to the mental anguish and emotional stress" he "became angry and frustrated with staff which led [him] to rebel against them, which led me to get institutional charges so that I was denied approval to progressive housing. . . ." He maintained that, after October 25, 2007, he still did not receive his Ramadan meals.

On December 28, 2005, Larry Huffman, the Regional Director for the Western Region of the Virginia Department of Corrections ('VDOC"), issued his Level II response to plaintiff's appeal. The Level II response stated, in relevant part:

> Your grievance appeal has been reviewed along with the response from the Level I respondent and the original complaint. Your grievance wherein you state that [you] were not permitted to receive Ramadan meals on October 7th, 8th, 9th, 12th, 13th, 17th, 18th, 21st, 23rd, 24th, 26th, 27th, 31st and November 1st, 2nd, and 4th has been investigated. You state that you being [sic] denied Ramadan meals was done as a retaliatory measure. You state that being denied Ramadan meals is a violation of your right to exercise your freedom of religion. You state that you want monetary damages to be awarded and to be transferred to a place where you will not be discriminated against. Investigation reveals that you were not afforded the opportunity to receive Ramadan meals on the above-mentioned dates through October 25th. Sgt. S. Deel called the kitchen and was informed that you had been removed from the Ramadan list due to information that you received regular meals along with Ramadan meals. After further investigation into your removal from the

6

Ramadan list it was determined that you had been taken off the Ramadan list in error and you were placed back on the list to receive Ramadan meals on October 25, 2005. There is no evidence to support your claim that your name being removed from the Ramadan list was done as a retaliatory measure.

I am upholding the decision at Level I, which has determined that your grievance was founded based on the procedure cited. Appropriate remedy has been provided. You were placed back on the list to receive Ramadan meals on October 25, 2005 and after that date you received Ramadan meals. Staff have been instructed to ensure that unless an inmate specifically requests to have their name removed from the Ramadan list, that no changes will be made.

Plaintiff was informed that "Level II is the last level of appeal for this grievance."

On May 12, 2006, plaintiff filed the instant complaint, seeking money damages. Defendants have filed a motion for summary judgment, accompanied by affidavits, regarding this claim, plaintiff has filed a response, and defendants' motion is ripe for disposition of this claim.

Defendants contend that ROSP's investigation indicated that "there was no evidence discovered to support Henderson's claim that his removal from the Ramadan list was done as a retaliatory measure." Further, defendants observe that plaintiff does not complain that he was not provided meals or meals that conform to his religious dietary requirements, but complains "only that he was not provided the Ramadan menu." Defendants point out that plaintiff was "provided the same meals given to non-fasting inmates," and that he "acknowledges that he observed the fast by saving those meals to eat at appropriate times consistent with the Ramadan fast."[6] In defendant's view, plaintiff's claim that his removal from the Ramadan list was retaliatory is a "bare allegation" with "no evidence to support it," and plaintiff "has shown no more than simple negligence," which does not state a claim under 42 U.S.C. § 1983, "on the part of some unknown and unnamed VDOC employee." In his response to defendants' motion for summary judgment, plaintiff maintains that

---

[6] Defendants add that plaintiff's "argument that his food spoiled before he could eat it is patently absurd."

the temporal proximity of an altercation he had with two correctional officers to his removal from the Ramadan list demonstrates that the removal was retaliatory.

Summary judgment must be granted in favor of defendants as to this claim. Although inmates clearly retain their First Amendment right to free exercise of religion in prison, O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987), including the right "to receive diets consistent with their religious scruples," Kahane v. Carlson, 527 F.2d 492, 495 (2nd Cir. 1975), "only intentional conduct is actionable under the Free Exercise Clause," Lovelace v. Lee, 472 F.3d 174, 201 (4th Cir. 2006) (citing Daniels v. Williams, 474 U.S. 327, 329-31 (1986)). In Lovelace, the Court of Appeals approved the district court's extension of the analysis in Daniels and Pink to the inmate plaintiff's First Amendment free exercise claim, where the district court (Kiser, J.) reasoned that the operative word "prohibit" in the First Amendment connotes a "conscious act" rather than a merely negligent one, and held that negligent interference with free exercise rights is not actionable under § 1983. Lovelace, 472 F.3d at 201; see also Lewis v. Mitchell, 416 F.Supp.2d 935, 942-44 (S.D. Cal. 2005); Shaheed v. Winston, 885 F.Supp. 861, 868 (E.D. Va. 1995).

Only intentional conduct is actionable under the Free Exercise Clause, and plaintiff has not identified any particular defendant whose intentional conduct deprived him of his free exercise rights. Taken in the light most favorable to plaintiff, the facts, the documentary evidence (including defendants' numerous affidavits submitted as exhibits with their motion for summary judgment), and plaintiff's allegations support, at most, a finding that defendants' actions resulted from negligence and not from intentional action.[7] There is no genuine dispute whether any of these defendants acted

---

[7] The court notes that plaintiff's own allegations state that he continued to observe the Ramadan fast, and ate his meals pre-sunrise and post-sunset. It is clear that, although plaintiff was given meals during the daylight
(continued...)

8

intentionally to deprive plaintiff of his free exercise rights, because plaintiff identifies no evidence upon which a jury could find that any individual defendant acted with the requisite intent.[8] Accordingly, summary judgment must be granted in favor of defendants as to plaintiff's First Amendment claim.

Moreover, in order to state a retaliation claim, an inmate must present more than conclusory allegations of retaliatory motive. Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). The "plaintiff must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Id. at 75. To state a prima facie claim of retaliation under § 1983, an inmate must allege facts showing that his exercise of a constitutionally protected right was a substantial factor motivating the retaliatory action. See, e.g., Hughes v. Bledsoe, 48 F.3d 1376, 1386 n.11 (4th Cir. 1995), citing Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287 (1977); see also Wagner v. Wheeler, 13 F.3d 86, 90-91 (4th Cir. 1993). Plaintiff must also allege that, as a result of the retaliatory action, he suffered some adverse impact on the continued exercise of his constitutional rights. American Civil Liberties

---

[7](...continued)
hours, he was not forced to eat during daylight hours, and was permitted to observe the Ramadan fast.

[8] Plaintiff asserts, in his response to defendants' motion for summary judgment, that "the defendants have provided no evidence to support their claim that the plaintiff's removal from the Ramadan list was an error." The court notes that defendants have produced a number of affidavits stating that plaintiff's name was removed "in error" by an "unknown and unnamed" VDOC employee. Defendants also provide evidence that a policy is now in place that prevents any Ramadan participant from being removed from the Ramadan list except at his own insistence. The court notes that plaintiff, despite receiving thorough discovery in this case, is unable to identify any individual defendant responsible for removing him from the Ramadan list.

Plaintiff adds that his "uniform individual log sheets" indicate that he received regular breakfast, lunch, and dinner meals in his cell after October 25, 2005. The log sheets indicate that Plaintiff received three meals in his cell on October 26 and 28, 2005. Otherwise, the log sheets indicate that, on all other dates after October 25, 2005, plaintiff received breakfast and dinner, but no lunch. Regarding the non-Ramadan meals plaintiff received on October 26 and 28, 2005, plaintiff again fails to show or allege intentional conduct on the part of any defendant. As the court has already observed, negligence is insufficient to state a claim under 42 U.S.C. § 1983.

9

Union v. Wicomico County, 999 F.2d 780, 784 (4th Cir. 1993) (finding that changes in prison regulations created a mere inconvenience to the exercise of constitutional rights and the inconvenience alone was not enough to constitute actionable retaliation). "Temporal proximity" between the inmate's protected activity and the allegedly retaliatory action "is simply too slender a reed on which to rest" a § 1983 retaliation claim. Wagner, 13 F.3d at 91.

Here, although plaintiff has invoked the constitutionally protected right to receive a diet consistent with his religious beliefs, he has not shown that he was actually deprived of that right; plaintiff admits that he continued to observe the Ramadan fast, and he does not contend that the food that was provided to him was inconsistent with his Muslim dietary requirements. Even assuming that his constitutional rights had been violated, he has not raised more than a conclusory allegation of retaliation based upon mere temporal proximity. Wagner, 13 F.3d at 91. The most plaintiff has alleged in support of his claim that his removal from the Ramadan list was retaliatory is that, during the period when he was denied his Ramadan meals, he was subjected to threats and catcalls from guards regarding the incident of October 7, 2005, when he threw feces[9] on two guards.[10] Plaintiff has not shown, nor does he allege, that any officer who spoke menacingly to him was responsible

---

[9] In claim 1, plaintiff elides over the particulars of this incident, characterizing it as a "verbal altercation." The disciplinary proceedings regarding this incident are the subject of plaintiff's third claim, infra. In documents submitted in support of claim 3, plaintiff clearly admits throwing the feces on the officer.

[10] Mere threats and catcalls do not state a claim of constitutional significance. The constitution does not "protect against all intrusions on one's peace of mind." Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991). A guard's verbal harassment or idle threats to an inmate, even if they cause an inmate fear or emotional anxiety, do not constitute an invasion of any identified liberty interest. See Collins v. Cundy, 603 F.2d 825, 828 (10th Cir. 1979) (holding that the Sheriff's actions in laughing at and threatening to hang the plaintiff were not sufficient to show the deprivation of a constitutional right); Emmons v. McLaughlin, 874 F.2d 351, 354 (6th Cir. 1989); Lamar v. Steele, 698 F.2d 1286 (5th Cir. 1983) ("Threats alone are not enough. A section 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation"). The law is clear that mere "threatening language and gestures of [a] penal officer do not, even if true, constitute constitutional violations." Fisher v. Woodson, 373 F. Supp. 970, 973 (E.D. Va. 1973).

10

for his removal from the Ramadan list; he simply states the conclusory allegation that the temporal proximity between the removal and the feces-throwing assault proves that his removal from the Ramadan list was retaliatory. Accordingly, plaintiff has failed to state a claim of retaliation "in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams, 40 F.3d at 75.

For the aforementioned reasons, the court will grant summary judgment in favor of defendants as to Claim 1.[11]

## IV. Claim 2

Plaintiff's second claim is that he was placed in ambulatory restraints and denied five meals during the period from October 7, 2005 to October 9, 2005, and that the denial of these meals was cruel and unusual punishment in violation of the Eighth Amendment and in retaliation for assaulting two correctional officers by throwing feces on them. Plaintiff filed a grievance regarding the matter. On November 15, 2005, the Warden issued his Level I response to plaintiff's grievance, stating, in pertinent part:

> **Grievance Summary:** You stated you were in ambulatory restraints from October 7-9, 2005. You stated Officers Cox, Rasnick, Bartee, Sgt. McCoy, Lt. McCoy, Capt. Kiser and Capt. Taylor refused your five (5) meals.

> **Informal Summary:** Your informal complaint, responded to by Sgt. T. McCoy[,]

---

[11] The court's review of the docket in this case indicates that it has been unable to complete service as to two defendants identified in this claim. These defendants, Ramey and Crabtee, have not filed motions in response to the complaint. Nonetheless, the court finds that the claims against these defendants must be dismissed. As the preceding analysis indicates, only intentional conduct is actionable under the Free Exercise Clause, plaintiff has not identified any particular defendant whose intentional conduct deprived him of his free exercise rights, and, even assuming that his constitutional rights were violated, he has not raised more than a conclusory allegation of retaliation based upon mere temporal proximity. Moreover, plaintiff stated no specific facts regarding defendants Ramey and Crabtree. Because plaintiff fails to state "more than labels and conclusions," Bell Atlantic Corp. v. Twombly, 127 S. Ct. at 1965, the claims will be dismissed under 28 U.S.C. § 1915(e)(2) for failure to state a claim upon which relief may be granted.

11

stated you were placed in ambulatory restraints to control your assaultive behavior. You were afforded the opportunity to eat at every meal. At no time is ambulatory restrains [sic] or the denial of meals used as punishment. I have witnessed no such activity. I can find no merit to support your claim.

**Investigation:** Sgt. T. Adams, Institutional Investigator, reviewed your claim. He found that each time officers came to feed; [sic] you would curse the officers and refuse to accept your meals. No merit was found to your allegations.

* * *

In accordance with the above information, this grievance is considered to be **UNFOUNDED**, as procedures have been correctly applied. No further action appears to be necessary at this time.

Plaintiff timely lodged an appeal and, on November 22, 2005, the Regional Director issued his Level II response, which stated, in relevant part:

Your grievance appeal has been reviewed along with the Level I response and your original complaint. Your grievance wherein you state that you were in ambulatory restraints from October 7th-9th, 2005 and during this time frame, Officer Cox, Officer Rasnick, Officer Bartee, Sgt. McCoy, Captain Kiser, and Captain Taylor refused to feed you five (5) meals has been investigated. You state this was done as a means of punishment. Investigation reveals there is no evidence to support your allegations that from October 7th-9th, 2005, while you were in ambulatory restraints, that Officer Cox, Officer Rasnick, Officer Bartee, Sgt. McCoy, Captain Kiser, and/or Captain Taylor refused to feed you five (5) meals. Records reveal that during the above-mentioned time frame, there were incidences where staff came to feed you and you would curse at the officers and you refused to accept your meals. . . .

Plaintiff was informed that the "decision of the Level I Respondent is Upheld" and that "Level II is the last level of appeal for this grievance.

In the instant complaint, plaintiff states that, from October 7-9, 2005, he "was denied 5 meals as retaliation and punishment" and he "was placed in ambulatory restraints[] for allegedly assaulting two officers."[12] He alleges that, during that time, the officers named above "constantly" came to his

---

[12] Again, the court notes that, in his grievances filed with ROSP's administrative remedies system

(continued...)

12

cell and made "retaliatory statements."[13]  He asserts that this conduct subjected him to cruel and

unusual punishment in violation of the Eighth Amendment because he was left hungry for two days

and he "became physically weak and unable to function normally from being malnourished." In their

motion for summary judgment, supported by affidavits, defendants[14] counter that plaintiff's meals

were not withheld and, thus, there was no retaliatory withholding of meals.  Defendants maintain

further that they did not make "any such statement" to plaintiff, and that "[t]he matter was

investigated, and the investigation revealed that each time the officers came to feed him, Henderson

would curse the officers and refuse to accept his meals." Defendants further contend that "any injury

caused to Henderson by missing five meals over a three day period is de minimis." In his response

to defendants' motion for summary judgment, plaintiff maintains that video evidence, "which

defendants claim not to have,"[15] would prove his allegations that food was not offered to him; he also

maintains that missing the meals made him "physically weak" and that a plaintiff need not show a

physical injury to state a retaliation claim.

  While the Eighth Amendment protects prisoners from cruel and unusual living conditions,

an inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or

_____

[12](...continued)
regarding the disciplinary proceedings regarding the feces-throwing incident, plaintiff explicitly admits having
thrown the feces on the guards.

 [13] Plaintiff asserts that defendants uttered the following statements: "Shit throwers don't get fed"; "You
will starve before we allow you to eat"; and "This is a lesson for throwing shit on my officers."

 [14] When defendants filed their motion for summary judgment, the court had not effected service on Officer
Bartee.  Bartee has since been served in this matter and, by counsel, has submitted a motion for summary judgment
incorporating by reference the original motion for summary judgment of September 21, 2006, and submitting his
own affidavit in the matter.

 [15] Counsel for defendants has submitted to the court that there is no C-4 pod video available, explaining
that the tape in the stationary video covering the time during which plaintiff was in ambulatory restraints has been
re-used.

inconvenient conditions of confinement, for, "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). To prove such a claim, the inmate must demonstrate that prison officials were deliberately indifferent to a serious risk of harm posed by the challenged condition. Farmer v. Brennan, 511 U.S. 825, 835 (1994). To prove deliberate indifference, plaintiff must show that the official was aware of facts from which he could draw an inference that a substantial risk of harm existed and that he actually drew that inference. Id. at 837. Then, plaintiff must show that the official disregarded the risk by failing to take "reasonable measures" to alleviate the risk. Id. at 832. A plaintiff must also allege facts sufficient to show either that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions or that the conditions have created an unreasonable risk of serious damage to his future health. Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 1993); Helling v. McKinney, 509 U.S. 25 (1993).

Regardless of whether plaintiff was, in fact, denied five meals over a two-day period, he fails to present a genuine issue of material fact as to any serious or significant injury he suffered as a result of missing the meals. The most plaintiff alleges is that he grew physically weak; he presents no medical evidence or allegations that he suffered any injury or is at risk of injury. Mere hunger or physical weakness is not a significant physical injury. See Madison v. Kilbourne, et al., Civil Action No. 7:04-cv-00639 (W.D. Va. July 18, 2006), rev'd on other grounds, Case No. 06-7333 (4th Cir. March 27, 2007); see also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1993) (prisoner must show physical injury to maintain a civil action based upon inadequate nutrition); Waring v. Meachum, 175 F. Supp. 2d 230, 240 (D. Conn. 2001) (missing meals during security lockdown did not violate Eighth Amendment); Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir.1999) (holding

14

that the plaintiff failed to allege injuries that were "sufficiently serious to be constitutionally actionable," where the plaintiff stated that his exposure to environmental tobacco smoke resulted in breathing problems, chest pains, dizziness, sinus problems, headaches, and a loss of energy); Oliver v. Deen, 77 F.3d 156, 160 (7th Cir. 1996) (finding that evidence of "considerable" medical treatment for asthma related concerns following exposure to smoke did not establish constitutionally significant injury); Alexander v. Tippah County, Miss., 351 F.3d 626, 631 (5th Cir. 2003) (stating that any injury incurred from vomiting and nausea which was not so severe as to require medical intervention or have lasting health effects, was de minimis). Accordingly, the court will grant summary judgment in favor of defendants as to the Eight Amendment claim plaintiff set forth in Claim 2.[16]

Additionally, plaintiff's retaliation claim fails. The court has already set forth, supra, the

---

[16] Plaintiff does not dispute that he engaged in assaultive behavior when he was removed from the recreation cage after having thrown the feces on the two guards. Plaintiff does not allege that his placement in ambulatory restraints to control his assaultive behavior was improper. Insofar as plaintiff's claim could be construed to include a claim that his placement in ambulatory restraints constituted excessive force, it fails. In the first instance, the use of four- or five-point restraints to control prison inmates is not per se unconstitutional. See Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir.1996); Sadler v. Young, 325 F. Supp.2d 689, 702 (W.D. Va. 2004). This court has previously found that the extended use of ambulatory restraints does not violate the Eighth Amendment. See Teal v. Braxton, Case No. 7:04-cv-00406, 2005 WL 467985 (W.D. Va. 2005) (unpublished); Shelton v. Schilling, Case No. 7:04-cv-00228, 2005 WL 2406094 (W.D. Va. 2005) (unpublished). Moreover, to prevail in an Eighth Amendment claim regarding use of force, an inmate must prove (1) that the officers "acted with a sufficiently culpable state of mind" (the subjective component) and (2) that "the deprivation suffered or injury inflicted on [him] was sufficiently serious" (the objective component). Williams, 77 F.3d at 761. The subjective component requires the inmate to show that the officers applied force not "in a good faith effort to maintain or restore discipline," but rather applied force "maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). In making this determination, the court must balance such factors as the need for the application of force, the relationship between the need and the amount of force actually applied, and the extent of injury inflicted. Id. The objective component requires the inmate to prove that the use of force was more than de minimis or, in the alternative, that it was repugnant to the conscience of mankind. Hudson, 503 U.S. at 9-10. De minimis injury can be conclusive evidence that the force used was also de minimis and, therefore, not violative of constitutional protections. See Norman v. Taylor, 25 F.3d 1259, 1264 (4th Cir.1994). The Fourth Circuit has defined two types of extraordinary circumstances that give rise to an excessive force claim where plaintiff suffered no lasting injury: when the "force used [is] of a sort repugnant to the conscience of mankind . . . or the pain itself [is] such that it can properly be said to constitute more than de minimis injury." Id. at 1264 n.4.

15

framework for stating a claim of retaliation. Under those principles, plaintiff fails to allege facts stating any retaliation claim in relation to the events of October 7-9, 2005. He alleges that officers withheld his meals in retaliation against him because he had been involved in an altercation with two other officers, upon whom he threw feces. Those conclusory allegations do not reflect that the exercise of a constitutional right motivated the officers' challenged conduct or that the challenged conduct itself was undertaken to chill plaintiff's exercise of a constitutionally protected right. Thus, plaintiff fails to state a § 1983 retaliation claim under Adams, 40 F.3d at 74-75. Furthermore, when a plaintiff does not allege facts stating any constitutional claim, a defendant is entitled to summary judgment on the ground of qualified immunity. Saucier v. Katz, 533 U.S. 194, 200-01 (2001). Accordingly, summary judgment will be granted in favor of defendants as to Claim 2.

## V. Claim 3

Plaintiff's third claim states that he "was wrongfully given an institutional charge [under offense] code 124," which charged him with "throwing body wastes on another person" as a result of his throwing feces on two guards on October 7, 2005. Plaintiff claims that he was improperly required to pay restitution and deprived of his recreation privileges as a result of the disciplinary hearings that followed the feces-throwing incident, which eventually led to a finding of guilt under offense code 111 for destruction of state property. The following factual summary has been adduced from plaintiff's and defendants' submissions, including evidence that forms a complete record concerning the disciplinary proceedings.

On October 7, 2005, at approximately 1:35 p.m., plaintiff intentionally threw feces from two small bags while on the C-4 recreation yard, striking Officers Cox and Bartee and covering them from head to toe with feces. The officers were examined by a doctor. The officers' clothing was

16

placed into a biohazard bag and subsequently destroyed. Plaintiff was charged with "offense code 124, spitting/throwing, or otherwise transferring of bodily waste/fluids on another person." On October 8, 2005, plaintiff was provided with a copy of the Disciplinary Offense Report ("Report") regarding the events of October 7, 2005, signed by Officer Cox.[17] The Report indicates that plaintiff was advised of his rights, and that he requested the presence of an inmate or staff advisor at his hearing, the right to request witnesses, the right to request documentary evidence, the right to a 24-hour preparation time prior to the hearing, and the right to appear at the disciplinary hearing.

On October 26, 2005, plaintiff received a hearing on the charge of offense code 124 and was found guilty of the offense. The parties' evidence indicates that plaintiff "became verbally disruptive and was removed from the hearing before he entered a plea to the charge." The reporting officer was present at the hearing, there was no denial of requested witnesses, and no documentary evidence was presented. The Inmate Hearings Officer ("IHO") found plaintiff guilty, stating the following reason for the decision:

> C/O B. Cox testified that he and C/O Bartee were standing in front of the recreation cage of inmate T. Henderson, #294185 and he squirted feces on them. Both officer's uniforms and equipment had to be thrown away because they were contaminated. Inmate Henderson was removed from the hearing before making a statement.

Plaintiff was given the following penalty: "30 days loss of recreation privileges from 10-26-05 through 11-24-05 and restitution of $303.78."[18]

---

[17] Plaintiff did not sign the Report; the "Inmate's Signature" line indicates that plaintiff was "in restraints." The signatures of the officer who served and witnessed the report are illegible.

[18] The cost to replace the officers' clothes and equipment was $303.78. Plaintiff was given the following "Notice of Restitution/Loss of Pay/Deduction of Fine":

> As a result of the above listed conviction and imposition of penalty, the amount of Restitution/Fine will be deducted from your inmate account. If there are insufficient funds on
> (continued...)

17

After reviewing the description of the offense, Tracy Ray, the Warden at ROSP, decided that "offense code 111, intentionally destroying, altering, or damaging state, or any person's property," was more appropriate for plaintiff's offense. VDOC Division Operation Procedure ("DOP") 861.21(D6) states that the Warden has the authority to order a rehearing under a higher, equivalent, or lesser offense code if the Warden determines that the inmate was charged with an incorrect offense. On December 14, 2005, the Warden addressed a memorandum to plaintiff explaining that he was "ordering a rehearing" on the offense under offense code 111 because he had

> decided that Offense Code #111 "intentionally destroying, altering, or damaging state, or any person's property" would better address the description of the offense, which indicates you did intentionally throw feces from two small bags while on the recreation yard. The feces did strike two Officers covering them both from head to toe. Their clothing had to be placed in a biohazard bag.

On December 16, 2005, plaintiff submitted a disciplinary appeal of the 124 to the Warden. Plaintiff claimed the offense report was "erroneous" because "there were no laboratory tests taken to determine what if any substance was thrown on the officers. . . ." He also stated that the discipline imposed was inappropriate because DOPs provide that "loss of recreation and/or extracurricular activities may not be used to deny an inmate assigned to administrative segregation status out-of-cell." Plaintiff maintained that, subsequent to the finding of guilt under offense code 124, he had been "placed on recreation restriction for 30 days." In his view, he had

> already served the 30 days so the damage has been done are you going to pay me for the time I was unlawfully denied my recreation? I suffered depression, back pains,

---

[18](...continued)
your account, the amount will be set up as an outstanding debt to be paid when funds are deposited to your account. . . .

The property was specified as follows: "2 shirts @ $16.00 ea., 2 pants @ 31.00 ea., 2 duty belts @ $15.59 ea., 2 handcuff cases @ $16.20 ea., 2 belts @ $16.65 ea., 2 glove pouches @ $7.10 ea., 2 radio clips @ #33.15 ea., 2 sets chevrons (rank) @ $3.10 ea., 2 sets belt keepers @ $13.10 ea."

18

lethargy, cramps leg pain from being locked in a cell 24 hours a day. If you are not willing to compensate me for this violation the charge should be dismissed.

Regarding the Warden's change of "charge to a 111 offense code," plaintiff asserted that "[t]his change is erroneous c/o B. Cox wrote the 124 because I threw feces on him therefore a 111 is not the correct offense." Plaintiff added that he "should not have recieved [sic] restitution for the 124 offense," and that the imposition of restitution violated DOP. Plaintiff further maintained that offense code 111 was inappropriate because "[n]o where [sic] in the description of the offense does it state that I destroyed damaged or altered state or any persons [sic] property. . . ." In plaintiff's view, "Warden Rays [sic] reason for changing the charge from a 124 to a 111 is not valid, it does however state that feces was thrown on 2 officers so the original 124 was the correct offense," and "[r]estitution is not an authorized penalty for a 124 offense therefore I cannot be forced to pay the $303.78 restitution." Plaintiff stated, "I would like my money reimbursed and the charge dismissed **I am guilty of a 124 offense and I do not challenge the guilty decision** I am only challenging the penalty of 30 days loss of recreation and the restitution of $303.78." (Emphasis added.)

Once the rehearing was ordered, the charge for offense code 124 was removed from plaintiff's records, and ceased to exist. On December 21, 2005, plaintiff was charged with the destruction of property under offense code 111 as a result of the feces-throwing incident of October 7, 2005. Plaintiff signed the Disciplinary Offense Report, dated December 21, 2005.[19] The Report indicates that plaintiff was advised of his rights, and that he requested the presence of an inmate or

---

[19] The Report, signed by Officer Cox, stated that,

[o]n Friday October 7, 2005 at approximately 1:35 P.M. Inmate Henderson did intentionally throw feces from two small bags while on the C-4 Rec yard. The feces did strike Officer Bartee and me covering us both from head to toe. Our clothing had to be placed in a biohazard bag and we were allowed to take a shower. Charged per DOP 861.

staff advisor at his hearing, the right to request witnesses, the right to request documentary evidence, the right to a 24-hour preparation time prior to the hearing, and the right to appear at the disciplinary hearing. Also on December 21, 2005, a penalty offer was extended to plaintiff, wherein plaintiff could agree to the payment of restitution. Plaintiff did not accept the penalty offer.

A hearing on the offense code 111 charge was conducted on December 30, 2005.[20] Plaintiff was present and pleaded not guilty. Officer Cox provided eyewitness testimony that, on October 7, 2005, plaintiff threw feces on him and Officer Bartee, and that their clothing had subsequently been placed in a biohazard bag for destruction. Officer Bartee confirmed Officer Cox's testimony and identified plaintiff as the inmate who threw feces on them. Plaintiff denied the charge, stating that the officers were lying and questioning the offense code with which he was charged. The IHO determined that there was no indication that the officers had lied, and also determined that their clothing had been covered in feces, placed in a biohazard bag, and destroyed. The IHO found that plaintiff's intentional actions had resulted in the destruction of state property and that plaintiff was guilty of offense code 111. A penalty of restitution in the amount of $303.78 was imposed for the replacement cost of the two sets of uniforms and gear.

Plaintiff appealed the IHO's decision to the Warden, raising numerous issues. On January

---

[20] Prior to the hearing, plaintiff produced a witness statement from another inmate, who stated, "On the about day and time I threw the stuff on the C/O's." The IHO determined that the statement was relevant and that the witness would appear at the hearing. The section of the Report summarizing the disciplinary hearing indicates that there was no denial of requested witnesses.

Plaintiff also requested documentary evidence showing that laboratory tests had been performed on the substance thrown on the uniforms. The IHO deemed the information not relevant. Additionally, plaintiff requested documentary evidence showing "how much the cleaning of the uniforms cost, or paperwork that shows that the clothing was destroyed damaged or altered." The IHO deemed this information not relevant.

20

31, 2006, the Warden denied his appeal.[21]  Subsequently, plaintiff appealed the Warden's response to the VDOC's Regional Director.  On April 13, 2006, the Regional Director responded to plaintiff's appeal, advising plaintiff that a review of the Warden's response revealed that the Warden had appropriately addressed plaintiff's issues in their entirety, fully, and explicitly.

The crux of plaintiff's claim 3 in the instant complaint is that "two penalties were imposed." Plaintiff claims that he lost his recreation privileges for 30 days and that he was required to pay restitution for the destruction of the officers' uniforms; he asserts that restitution is not an authorized penalty under offense code 124, and that the loss of recreation privileges is inappropriate under offense code 111.  In his view, these penalties were imposed in violation of the VDOC's Division Operating Procedures 861 and 822, as well as "state law," thus denying his rights to due process. Defendants have filed a motion for summary judgment, plaintiff has responded, and the motion is ripe for disposition.

Inmates have a right to be free of arbitrary punishment.  See Howard v. Smyth, 365 F.2d 428 (4th Cir.1966).  However, their constitutional protections are limited.  In order for plaintiff to prevail

---

[21] In response to plaintiff's appeal, the Warden addressed a seven-page, single-spaced memorandum to plaintiff, explaining his denial of each of the thirteen claims plaintiff raised.  Significantly, plaintiff alleged that he was not appealing the guilty verdict for offense code 124, but was appealing only the 30-day loss of recreation and the imposition of restitution penalties.  Plaintiff alleged that the Warden's reason for ordering the rehearing of the charge under offense code 111 was fraudulent, because the offense was not supported by the description of the offense, and further stated that the only reason the offense was changed from offense code 124 to offense code 111 was because the Warden wanted to impose a restitution penalty of $303.78, which could not be imposed under offense code 124.  In response, the Warden explained that DOP 861.25(4) states that no greater penalty may be imposed than the penalty imposed at the original hearing, with the exception of mandatory penalties.  The Warden, who had listened to a tape recording of the hearing, noted that the IHO had explained to plaintiff that the offense code 124 charge no longer existed, that the hearing had been reordered for an offense code 111 charge, that the offense code 124 charge was no longer relevant, that the penalty assessed for the offense code 111 charge was restitution for the replacement of the uniforms and gear, and that the penalty was appropriate for the charge. The Warden further explained that the 111 charge was supported by a description of the offense and by the evidence presented at the hearing, as the uniforms were contaminated by plaintiff's intentional actions and had to be destroyed because of plaintiff's intentional actions.

21

on his due process claim, he must show that his punishment was not "within the normal limits or range of custody which the conviction has authorized the [prison authorities] to impose," and thus created a liberty interest in avoiding that penalty. See Sandin v. Conner, 515 U.S. 472, 478 (1995) (quoting Meachum v. Fano, 427 U.S. 215, 225 (1976)). When an inmate demonstrates that a liberty interest is at stake or is faced with loss of statutory good-time credits or solitary confinement, some limited federal due process protections apply. Wolff v. McDonnell, 418 U.S. 539, 557-58 (1974). Wolff outlines these due process guarantees as follows: (1) advanced written notice of the claimed violation; (2) disclosure of evidence against the defender; (3) the right to confront and cross-examine witnesses (unless the hearing officer finds good cause not to allow confrontation); (4) a neutral detached hearing body; and (5) a written statement of the finder of facts as to the evidence relied upon and the reasons for the disciplinary action taken. Id. at 564-71. In addition, there must be "some evidence" to support the disciplinary board's conclusions. Superintendent v. Hill, 472 U.S. 445, 447 (1985).

Plaintiff has no federal due process claim as to the 124 charge. The discipline imposed on plaintiff for the 124 charge did not subject him to the loss of good-time credits or solitary confinement, Wolff, 418 U.S. at 557-58, and he had no protected liberty interest in avoiding 30 days' loss of recreation privileges. Applying Sandin, it is clear that the loss of recreation privileges is "within the normal limits or range of custody which the conviction has authorized the [prison authorities] to impose," id., 515 U.S. at 478, and plaintiff experienced no atypical hardship. Thus, there is no federal right to enhanced procedural protections at issue here.[22]

---

[22] In any event, as indicated in the preceding factual summary, plaintiff received all the procedural safeguards guaranteed by Wolff, 418 U.S. at 564-71, as to the loss of recreation under offense code 124.

Second, as to the restitution penalty, plaintiff received the procedural guarantees of <u>Wolff</u>. 418 U.S. at 564-71. The restitution penalty raises a protected property interest, and thus plaintiff was entitled to the following due process guarantees: advanced written notice of the violation; disclosure of the evidence against him; the right to confront and cross-examine witnesses; a neutral and detached hearing body; and a written statement of the IHO as to the evidence relied upon and the reasons for the disciplinary action taken. <u>Id</u>, 418 U.S. at 564-71. Plaintiff's own submissions indicate that he received these protections; indeed, he does not dispute that he received these protections. Moreover, the record reveals that there is "some evidence" to support the IHO's conclusions.[23] <u>Hill</u>, 472 U.S. at 447. Federal courts will not review the accuracy of a disciplinary committee's finding of fact. <u>Kelly v. Cooper</u>, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). Such findings will only be disturbed if they are unsupported by any evidence or are wholly arbitrary and capricious. <u>Smith v. Rabalais</u>, 659 F.2d 539, 545 (5th Cir. 1981); <u>see also</u> <u>Chevron v. Natural Res. Def. Council</u>, 467 U.S. 837, 844 (1984) (an agency's decisions are not to be second-guessed by federal courts unless they are arbitrary, capricious, or manifestly contrary to the statute).[24]

---

[23] Again, the record indicates that plaintiff admitted throwing the feces and that there was sufficient testimony introduced at plaintiff's disciplinary hearings to justify a finding of guilt under offense code 111. Plaintiff intentionally threw the feces, which necessitated the destruction of the uniforms and gear.

[24] To be sure, plaintiff is correct in his assertion that he was subjected to discipline under two separate charges. Even though the 124 charge was expunged and the loss of thirty days' recreation privileges does not implicate a protected liberty interest, it is possible that plaintiff's loss of thirty days' recreation, combined with the subsequent imposition of the restitution penalty, violated the VDOC's Division Operating Procedures. However, the failure of a state to meet the requirement of a state-created procedural rule does not rise to the level of a violation of the due process clause under 42 U.S.C. § 1983. <u>See</u> <u>Riccio v. County of Fairfax</u>, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that "[i]f state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue"). And, to the extent plaintiff believes he has an actionable claim against the defendants under state law, the court declines to exercise supplemental jurisdiction over such claims, pursuant to 28 U.S.C. § 1367(c)(3), which provides that "district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."

For the foregoing reasons, summary judgment will be granted to defendants regarding plaintiff's claim 3, alleging that the disciplinary proceedings against him following the feces-throwing incident of October 7, 2005, violated his right to due process.

## VI. Claim 4

Plaintiff's fourth claim arises from a complaint regarding dental treatment. Plaintiff alleges that, in March 2005, he broke a tooth when he bit "into a piece of metal which was concealed in some food served by the kitchen," and that Dr. Bailey, the institutional dentist, has refused to repair the broken tooth and treat other dental problems, including "painful gums." He also contends that the prison employs inadequate dental staff.

The relevant facts are contained in plaintiff's submissions demonstrating his exhaustion of ROSP's administrative remedies system. In March 2005, after plaintiff's tooth broke, Dr. Bailey fitted plaintiff with an acrylic crown, which would not remain affixed to the remaining post. However, plaintiff declined to have the tooth extracted, as recommended by the dentist at ROSP. Plaintiff, dissatisfied with both the timeliness of the treatment and the outcome, exhausted his administrative remedies without satisfaction. On September 1, 2005, the Warden issued his Level I response to plaintiff's grievance, stating, in pertinent part:

> **Grievance Summary:** You stated you have been denied dental treatment for the last four (4) months.
>
> **Informal Summary:** Your informal complaint, responded to by Dr. Bailey stated, []ROSP, like all institutions, has a priority-based scheduling system for dental treatment. Matters of a more urgent nature, such as swelling, infection, etc. are scheduled first. Matters of a less urgent nature are then scheduled as staff time permits. Your front tooth is not infected. It was not causing pain because the nerve has been removed during root canal therapy. There is very, very little that can be done for this tooth at ROSP. Due to the way you bite, the acrylic crown would not stay on. Your last hope of [sic] this tooth is a permanent crown after you are

24

released. You will be seen by the ROSP dentist when your turn comes.

You were interviewed regarding this complaint on August 12, 2005, by Dr. Bailey.

**Investigation:** Issues concerning treatment options for tooth #9 were discussed with you on August 12, 2005. An acrylic crown was previously placed on the tooth per DOP 716-7.0, E.3 and E.5. Due to the nature of the way you bite, the acrylic crown had failed. Your treatment options were given:

> (1) leave the tooth as is for eventual treatment by a dentist following release (permanent crown),
> (2) have the tooth extracted by the oral surgeon.

You stated you wished to have the tooth extracted.

* * *

In accordance with the above information, this grievance is considered to be **UNFOUNDED** . . . .

Plaintiff filed a Level II appeal of the denial of his grievance. On October 11, 2005, the

VDOC's Health Services Director upheld the Warden's denial, stating, in relevant part:

> Your grievance appeal has been reviewed along with the response from Level I, and your original complaint that you have been unable to get dental treatment for your upper left central incisor.

> Based on the information provided and upon further investigation, I concur with the Level I respondent and determine that your grievance is unfounded. A review of your case revealed that the tooth has been treated with a root canal and is not causing pain or swelling. You are seeking a crown for esthetic reasons. The tooth has been treated with an acrylic temporary crown in an attempt to improve your esthetics but the temporary crown fractured because of heavy biting pressure. The dentist informed you that the Virginia Department of Corrections does not provide permanent esthetic crowns. He also informed you that another temporary acrylic would fracture and that a composite restoration would fracture and that a composite restoration would not bond to the tooth because of the lack of enamel[.] [H]e further informed you that you could leave the tooth as it is and get a permanent crown when you are released or you could have the tooth extracted. The dentist at Red Onion has attempted to improve your esthetics by providing a temporary. After the temporary crown fractured, the dentist properly offered you options for tooth. [sic] There has been no violation of policy or denial of treatment. There has been no violation of

25

policy.

Plaintiff was informed that the Level II response concluded "the last level of appeal for this complaint."

In this instant complaint, plaintiff alleges that he was denied adequate and timely dental care because ROSP employs too few dentists and support staff. As defendants, he names Dr. Bailey, Dr. Tatro, Warden Ray, and the VDOC's Director of Health Services, Fred Schilling.

## A. Dr. Bailey's Motion for Summary Judgment

Dr. Bailey has submitted a motion for summary judgment, with affidavits and the relevant parts of plaintiff's inmate dental records attached. Plaintiff has responded in opposition to Dr. Bailey's motion, Dr. Bailey has submitted a reply in response to plaintiff's opposition, and Dr. Bailey's motion is ripe for disposition. For the following reasons, summary judgment will be granted in favor of Dr. Bailey.

With his motion and reply, Dr. Bailey has submitted affidavits recounting the facts as set forth above, stating that he informed plaintiff that a crown would not work satisfactorily unless plaintiff had his bite corrected with orthodontia, a cosmetic process not available to VDOC inmates. Dr. Bailey further informed plaintiff that he could receive a satisfactory repair while in prison by having the tooth excised and the placement of a partial denture replacement tooth; alternatively, plaintiff could wait until he was out of prison, and have the tooth repaired by orthodontia and the placement of a permanent crown. In Dr. Bailey's view, the "missing crown does not present a serious medical condition." Dr. Bailey adds that he felt the tooth should be removed, but plaintiff

26

felt differently, stating that he desired some other, undefined course of treatment.[25]

In order to state a cognizable claim for denial of medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish deliberate indifference, a plaintiff must present facts to evince that the defendants had actual knowledge of and disregard for an objectively serious medical need. Farmer v. Brennan, 511 U.S. 825, 847 (1994); see also Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir. 1997). "'A serious medical need' is 'one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Shelton v. Angelone, 183 F. Supp. 2d 830, 840 (W.D. Va. 2002) (quoting Cox v. District of Columbia, 834 F. Supp. 439, 441 (D. D.C. 1992)). Disagreements between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment are not cognizable constitutional claims under the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Estelle, 429 U.S. at 105-06. To bring such a claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with a prison physician's treatment, or tacitly authorized or were indifferent to the prison physician's misconduct. Miltier v. Beorn, 896 F.2d 848, 854-55 (4th Cir. 1990). Claims of medical judgment are not subject to judicial review. Russell v. Sheffer, 528 F.2d 318, 318-19 (4th Cir. 1975). Additionally, an inmate is not entitled to unqualified access to health care; the right to medical

---

[25] Dr. Bailey adds that plaintiff has since been seen by a new dentist at ROSP, as Dr. Bailey has not been employed there since November 2005, and that the new dentist has not provided any different course of treatment. Dr. Bailey further submits that plaintiff was seen in the fall of 2005 by a private dentist in Abingdon, Virginia, and that the course of treatment remained unchanged.

27

treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998) (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)).

There is no genuine issue of material fact in dispute here. Plaintiff offers no evidence to dispute Dr. Bailey's medical judgment that plaintiff's dental problems did not then and do not now present a serious medical need. The evidence indicates that plaintiff has presented no symptoms whatsoever of infection, that plaintiff is able to eat, and that the care plaintiff prefers instead of the care proffered is cosmetic and therefore is not medically necessary. After a minor delay, Dr. Bailey treated plaintiff, and offered him further treatment, for a non-emergency dental complaint. Although plaintiff may believe that Dr. Bailey was deliberately indifferent to his dental needs by not providing the type of care he would have preferred to have received, he has not alleged any conduct that rises to the level of a federal constitutional violation. Plaintiff does not present facts to evince that Dr. Bailey had actual knowledge of and disregard for an objectively serious medical need; in fact, Dr. Bailey offered a course of treatment, which plaintiff declined. In sum, plaintiff was provided treatment for his tooth, and simply disagrees with the diagnosis and proffered course of treatment, which does not establish a cognizable constitutional claim. Wright, 766 F.2d at 849; Estelle, 429 U.S. at 105-06. Accordingly, the court finds that plaintiff's claim under the Eighth Amendment fails because he has not shown that Dr. Bailey was deliberately indifferent to any serious medical need or any other substantial risk of serious harm. Farmer, 511 U.S at 833. Nor has he alleged facts

28

sufficient to show a serious or significant mental or physical injury or an unreasonable risk of serious damage to his future health as a result of Dr. Bailey's treatment. Strickler, 989 F.2d at 1380-1381. Accordingly, summary judgment will be granted in favor of Dr. Bailey.[26, 27]

## B. Dr. Tatro's Motion to Dismiss

Plaintiff includes Dr. Tatro as a defendant in Claim 4. Dr. Tatro has submitted a motion to dismiss, stating that the allegations in the complaint "are nothing but conclusory allegations without any specificity as to Dr. Tatro" and that "[p]laintiff also fails to state an objectively serious medical need as a matter of law." On September 26, 2006, plaintiff was sent a notice directing him to file a response to Dr. Tatro's motion within twenty days. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975). Plaintiff was informed that, if he did not respond to the pleadings, the court would

> assume that plaintiff has lost interest in the case, and/or that plaintiff agrees with what the defendants state in their responsive pleadings. If plaintiff wishes to continue with the case, it is necessary that plaintiff respond in an appropriate fashion. Plaintiff may wish to respond with counter-affidavits or other additional evidence as outlined above. However, if plaintiff does not file some response within the twenty (20) day period, the court will dismiss the case for failure to prosecute.

Plaintiff has not responded to Dr. Tatro's motion to dismiss. Accordingly, the court could dismiss the claim against Dr. Tatro based on plaintiff's failure to prosecute. See Ballard v. Carlson, 882 F.2d 93, 95 (4th Cir. 1989) (pro se prisoner litigant's case was dismissed pursuant to Fed. R. Civ. P.

---

[26] To the extent that plaintiff's complaint could be construed to state a claim for dental malpractice, such claim would arise, if at all, under state medical malpractice laws, and does not present a colorable claim under § 1983. See Estelle, 429 U.S. at 105-106. To the extent plaintiff believes he has an actionable claim under state negligence law, the court declines to exercise supplemental jurisdiction over such claim, pursuant to 28 U.S.C. § 1367(c)(3). See supra n.22.

[27] The court notes that functions of prison management must be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). The VDOC's policies of not providing orthodontic treatment or permanent crowns do not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

Case 7:06-cv-00408-GEC-mfu    Document 107    Filed 09/21/07    Page 29 of 39    Pageid#: 675

41(b) because he "failed to respond to a specific directive from the court").

Nonetheless, as plaintiff's allegations and evidence as a whole fail to demonstrate that Dr. Tatro personally knew of any serious medical need to which he failed to respond reasonably, plaintiff fails to state a claim upon which relief may be granted against Dr. Tatro. Accordingly, the court will grant Dr. Tatro's motion to dismiss.

### C. Warden Ray and Mr. Schilling's Motion for Summary Judgment

In Claim 4, plaintiff also names as defendants Warden Ray and the VDOC's Director of Health Services, Fred Schilling. These defendants moved for summary judgment, plaintiff responded in opposition, and the motion is now ripe for disposition. For the following reasons, summary judgment will be granted in favor of the Warden and Mr. Schilling.

To bring such a claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with a prison physician's treatment, or tacitly authorized or were indifferent to the prison physician's misconduct. Miltier, 896 F.2d at 854-55. Additionally, claims of medical judgment are not subject to judicial review. Russell, 528 F.2d at 318-19.

Defendants' affidavit evidence demonstrates that neither of these defendants is a physician or a trained medical provider, and that both defendants rely upon the medical and dental expertise of the trained doctors and dentists at ROSP. Defendants' evidence makes it clear that plaintiff's broken tooth was treated by Dr. Bailey, and that Dr. Bailey made the treatment decisions. Plaintiff received treatment, and rejected Dr. Bailey's offer of further treatment. The evidence indicates that defendants reasonably relied upon the medical judgment of Dr. Bailey and other dentists at ROSP. Plaintiff offers no evidence upon which a reasonable factfinder could find in his favor on this claim.

30

Plaintiff has not shown that Warden Ray or Mr. Schilling personally or intentionally delayed, denied, or otherwise interfered with his access to dental care. Estelle, 429 U.S. 104-05.

Moreover, to the extent plaintiff asserts that it is unconstitutional for the VDOC or ROSP not to have a sufficient number of dentists employed at all times to provide complete dental care the very instant any dental issue arises, plaintiff's claim fails. Although plaintiff believes that the institution failed to treat his dental needs by not providing treatment to him on a schedule that gratified his demands, such actions do not rise to the level of a federal constitutional violation. Moreover, it is clear that plaintiff suffered no Eighth Amendment violation as to his dental treatment; in fact, the evidence indicates that the dental department at ROSP did indeed provide extensive dental treatment to plaintiff, including an acrylic crown and the offer to extract the broken tooth. Plaintiff's claim that the dental department at ROSP is insufficiently manned would arise, if at all, under state medical malpractice laws, and does not present any colorable 42 U.S.C. § 1983 claim.[28] Estelle, 429 U.S. at 105-106.

Accordingly, the court will grant summary judgment in favor of Warden Ray and Mr. Schilling as to Claim 4.

## VII. Claim 5

In claim 5, plaintiff states that, on February 19, 2006, while eating breakfast, he "swallowed shards of glasses [sic]." He states that he "immediately informed" officers, who inspected the tray and allegedly "witnessed the glass remaining." Plaintiff alleges that

[m]edical was then contacted, and Nurse J. Deel came to speak with me, she told me

_____

[28] To the extent plaintiff believes he has an actionable claim under state medical malpractice laws, the court declines to exercise supplemental jurisdiction over such claim, pursuant to 28 U.S.C. § 1367(c)(3). See supra n.22.

Case 7:06-cv-00408-GEC-mfu   Document 107   Filed 09/21/07   Page 31 of 39   Pageid#: 677

that "the glass should pass through, and if I had any further trouble to contact medical." On February 20th 2006 I began to have extreme abdominal pain and bloody stools, so as advised to do, I contacted medical and informed them of my problems. I also showed Nurse Deel my bloody stool, when she came to speak to me again on February 20th 2006. To treat my problems Nurse Deel gave me some Pepto Bismal [sic] and told me that "the glass would pass through" and that I would "be okay, just lay down and relax." I also began to have difficulties having a bowel movement at all, this lasted for approx. a week and even though I complained several times to medical personnel I recieved [sic] no treatment, I was left to suffer in pain for approx. two weeks, possibly longer. Deliberate indifference was shown towards my serious medical needs by Nurse J. Deel, Dr. Ohai, Nurse L. Yates, Nurse B. Sutherland, Warden Tracy Ray and the Health Services Director of the VA. D.O.C.

Plaintiff asserts that defendants should have ordered surgery to remove the glass from his stomach.

Plaintiff's own submissions indicate that he was examined on a number of occasions, but that medical personnel never noted any symptoms of gastrointestinal distress, other than his own statements that he had stomach pains, was vomiting, and had bloody stools. They told him that his vital signs and presentation indicated that he was healthy, in no danger of dehydration, and was not bleeding internally. On February 27, 2006, plaintiff filed an emergency grievance, seeking medical treatment. Plaintiff stated: "I want this glass extracted immediately." In response, medical staff re-evaluated him, with the same outcome. His grievance and appeals on the issue were ruled unfounded.

Defendants Deel, Yates, Ohai and Sutherland have filed motions to dismiss as to claim 5.[29]

_____

[29]On September 26, 2006, plaintiff was sent a notice directing him to file a response to Nurse Deel's and Nurse Yates's motions to dismiss within twenty days. See Roseboro, 528 F.2d at 310. On January 8, 2007, plaintiff was sent a notice directing him to file a response to Dr. Ohai's motion to dismiss within twenty days. On July 25, 2007, plaintiff was sent a notice directing him to file a response to Nurse Sutherland's motion to dismiss within twenty days. In each notice, plaintiff was informed that, if he did not respond to the pleadings, the court would

assume that plaintiff has lost interest in the case, and/or that plaintiff agrees with what the defendants state in their responsive pleadings. If plaintiff wishes to continue with the case,

(continued...)

32

They point out that "the Complaint on its face alleges that Plaintiff was seen for these complaints on February 19, 2006 and February 20, 2006 by Janet Deel and was provided medication," and indicates that by his own admission, plaintiff's abdominal complaint resolved in "approx [sic] two weeks, possibly longer," without the surgery that he requested. The court must agree.

Plaintiff fails to allege facts indicating that Defendants Yates, Sutherland, and Ohai had any personal involvement whatsoever with his medical treatment. Plaintiff alleges no facts demonstrating that any of these individuals was asked to provide or to arrange care for him, had any knowledge of his request for care, or was in any way involved in the treatment of his abdominal complaints. In short, plaintiff's claims against Nurse Yates, Dr. Ohai, and Nurse Sutherland fail to state "more than labels and conclusions," Bell Atlantic Corp. v. Twombly, 127 S. Ct. at 1965, and the claims must be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.[30]

Although Plaintiff alleges that Nurse Deel was personally involved with his treatment, he fails to allege facts demonstrating that she was aware of any substantial risk of harm to him arising

---

[29](...continued)
it is necessary that plaintiff respond in an appropriate fashion. Plaintiff may wish to respond with counter-affidavits or other additional evidence as outlined above. However, if plaintiff does not file some response within the twenty (20) day period, the court will dismiss the case for failure to prosecute.

Plaintiff has not responded to defendants' motions to dismiss. Accordingly, the court could dismiss the claims against Deel, Yates, Ohai, and Sutherland based on plaintiff's failure to prosecute. See Ballard, 882 F.2d at 95 (dismissing pro se prisoner litigant's case pursuant to Fed. R. Civ. P. 41(b) because he "failed to respond to a specific directive from the court"). Nonetheless, the court finds that the claims against these defendants must be dismissed on the merits of the motions to dismiss.

[30] The court stresses that plaintiff was given ample opportunity to amend his complaint, to submit additional evidence, and to respond to defendants' motions to dismiss. Plaintiff has presented no evidence whatsoever to contravene the court's conclusion that the motions to dismiss must be granted.

33

out of her care. In fact, plaintiff admits on the face of his complaint that, although he did not receive

the requested surgery to find the alleged swallowed glass, he did, in fact, receive treatment, and his

abdominal discomfort resolved within a reasonable time with the non-surgical care that was

provided. At the most, Plaintiff's allegations reflect nothing more than his mere disagreement with

Nurse Deel's diagnosis and treatment of his stomach problems. Thus, he fails to allege facts

demonstrating that Deel acted with deliberate indifference toward his needs. Wright, 766 F.2d at

849. Moreover, he fails to allege facts sufficient to show that his stomach complaints represented

a serious medical need, as by his own admission, the problems resolved without surgery or lengthy

treatment. Plaintiff's claim against Nurse Deel would arise, if at all, under state medical malpractice

laws, and does not present any colorable 42 U.S.C. § 1983 claim.[31]  Estelle, 429 U.S. at 105-106.

For the stated reasons, the motions to dismiss of defendants Deel, Yates, Ohai, and

Sutherland will be granted.[32]

## VIII. Claim 6

In Claim 6, plaintiff alleges that, in the course of a cell search on November 27, 2005, Sgt.

---

[31] To the extent plaintiff believes he has an actionable claim under state medical malpractice laws, the court declines to exercise supplemental jurisdiction over such claim, pursuant to 28 U.S.C. § 1367(c)(3). See supra n.22.

[32] Defendants Ray and Schilling addressed Claim 5 in their motion for summary judgment. For the same reasons as those stated in Claim 4, the court will grant summary judgment in favor of Warden Ray and Mr. Schilling as to claim 5. Plaintiff offers no evidence upon which a reasonable factfinder could find in his favor on this claim. Plaintiff has not shown that Warden Ray or Mr. Schilling personally or intentionally delayed, denied, or otherwise interfered with his access to care following the incident when he believed he had swallowed glass. Estelle, 429 U.S. 104-05. Defendants' affidavit evidence demonstrates that neither Ray nor Schilling is a physician or a trained medical provider, and that both defendants rely upon the medical and dental expertise of the trained doctors and dentists at ROSP. Defendants' evidence also makes it clear that plaintiff received treatment from Nurse Deel, and that Nurse Deel made such treatment decisions. The evidence indicates that defendants reasonably relied upon the medical judgment of its medical employees at ROSP. Plaintiff's claim would arise, if at all, under state medical malpractice laws, and does not present any colorable 42 U.S.C. § 1983 claim. Estelle, 429 U.S. at 105-106.

T. McCoy and officers Gentry and Stanley unlawfully removed his personal property. Plaintiff claims the following property was removed from his cell and given to another inmate: a television, headphones, wristwatch, "F-jack," and a coaxial cable. He states that he wants his "property returned or money reimbursed." Defendants have moved for summary judgment on the grounds that plaintiff failed to exhaust all available administrative remedies.

Defendants' exhibits, including an affidavit from ROSP's grievance coordinator, indicate that, on December 5, 2005, plaintiff submitted a regular grievance stating that some of his property was missing following a cell search on November 27, 2005. That grievance was returned to plaintiff because it did not have sufficient information; plaintiff was advised to re-submit the grievance with either a confiscation notice or a missing property report regarding the items referred to in the grievance. Plaintiff did not appeal that intake decision.

On December 6, 2005, plaintiff resubmitted the same grievance, again failing to attach the required documentation. Thus, the grievance was returned to him as having insufficient information. On December 27, 2005, plaintiff submitted another grievance regarding this issue, again without the required documentation. The grievance was again returned to him, with a notice from the grievance coordinator inquiring whether plaintiff had filed a missing property report when he did not get a confiscation notice for the allegedly missing property, and advising plaintiff to attach a missing property report to the grievance to support his claims. Plaintiff did not appeal that intake decision.

On December 27, 2005, plaintiff submitted an informal complaint to the grievance department, stating that he had filed a missing property report, but that he did not have a copy of it. The grievance coordinator responded on December 28, 2005, informing plaintiff that he should contact his counselor and have the counselor make a copy of the report. The grievance coordinator

35

advised plaintiff that he could re-submit the grievance once he had obtained a copy of the missing property report, but that the issue could not be investigated without some documentation to support his claim. The grievance coordinator also indicated that Sgt. McCoy could not recall anything being removed from plaintiff's cell during the search.

On January 5, 2006, plaintiff submitted another grievance regarding the allegedly missing property. This time, the grievance was returned to him as untimely. Subsequently, also on January 5, 2006, plaintiff submitted an informal complaint to the grievance office, stating that he had attempted to obtain a copy of the missing property report and that he wanted the grievance filed. The grievance coordinator responded, informing plaintiff that the time had expired for filing a grievance regarding the issue, and emphasizing that he was responsible for providing documentation of his claims.

On January 6, 2006, plaintiff again submitted a regular grievance regarding this issue, and again, it was returned to him as untimely. Plaintiff appealed the intake decision of January 6, 2006, and on January 20, 2006, the Regional Ombudsman upheld the intake decision.

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA") which provides, in part, that

> [n]o action shall be brought with respect to prison conditions under section 1983 of
> this title, or any other federal law, by a prisoner confined in any jail, prison, or other
> correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). By the plain language of the statute, exhaustion of administrative remedies is a precondition to the _filing_ of a prisoner's civil rights action; thus, a plaintiff who filed his lawsuit before exhausting administrative remedies cannot satisfy the § 1997e(a) requirement, even if he later demonstrates that he filed a grievance and appealed it to the highest extent of the prison's grievance

36

procedure <u>after</u> commencing the lawsuit. <u>See</u> <u>Dixon v. Page</u>, 291 F.3d 485 (7th Cir. 2002), <u>citing</u>

<u>Perez v. Wisconsin Dep't of Corrections</u>, 182 F.3d 532, 535 (7th Cir. 1999) (holding that an inmate

complaint must be dismissed for failure to exhaust even if the inmate demonstrates that he filed a

grievance and appealed it to the highest level of the prison's grievance procedure after commencing

the lawsuit).

 Proper exhaustion of administrative remedy procedures for purposes of § 1997e(a) means

using all steps that the agency holds out, and doing so properly, so that the agency addresses the

issues on the merits. <u>See, e.g.</u>, <u>Woodford v. Ngo</u>, 126 S.Ct. 2378, 2385 (2006) (reasoning, <u>id.</u> at

2387, that "[t]he text of 42 U.S.C. § 1997e(a) strongly suggests that the PLRA uses the term

'exhausted' to mean what the term means in administrative law, where exhaustion means proper

exhaustion. Section 1997e(a) refers to 'such administrative remedies as are available,' and thus

points to the doctrine of exhaustion in administrative law"). Section 1997e(a) applies whether or not

the form of relief the inmate seeks is available through exhaustion of administrative remedies. <u>Booth</u>

<u>v. Churner</u>, 532 U.S. 731, 741 (2001). The exhaustion provision is mandatory, even in those

instances where an inmate claims that exhaustion would be futile or the remedy inadequate. <u>Id.</u> at

741, n.6. For example, the inmate in <u>Booth</u> filed a grievance pursuant to the state prison's grievance

procedure, but failed to appeal the denial to the intermediate or final appeal levels. Because the

inmate failed to appeal the denial, the inmate was deemed to have failed to exhaust his

administrative remedies. <u>Id.</u> at 735. Additionally, the Court in <u>Booth</u> held that even where inmates

limited their "prayers for relief to money damages not offered through administrative grievance

mechanisms . . . . Congress has mandated exhaustion clearly enough." <u>Id.</u> at 741.

 Defendants' exhibits indicate that, although plaintiff filed a number of grievances regarding

the allegedly missing property, they were all returned to him as deficient, and plaintiff did not appeal

the denial of any of those initial grievances or correct the deficiencies and resubmit the grievances

within the allotted time. The first time plaintiff filed an appeal of a denial was when he appealed the

grievance that was denied because it was filed outside the 30-day period. Because plaintiff did not

utilize all steps of the grievance procedures when they were available to him, the court concludes

that he failed to exhaust his administrative remedies. Id. at 741, n.6.[33] There is no genuine issue

of material fact as to this issue. It is clear that plaintiff failed to properly exhaust the administrative

remedies available to him through the inmate grievance system, as required by 42 U.S.C. § 1997e(a),

and the grievance procedure is now unavailable to plaintiff regarding this claim because he failed

to utilize it in a timely fashion. Accordingly, the court will grant summary judgment in favor of

defendants as to Claim 6 .[34, 35]

---

[33] The court notes that defendants' conduct, i.e., insisting that plaintiff abide by established rules and procedures governing the filing of administrative remedies, does not rise to the level of a constitutional violation. Moreover, inmates do not have a constitutionally protected right to participate in a grievance procedure. Brown v. Dodson, 863 F.Supp. 284 (W.D. Va.1994). See also Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (federal regulations providing for administrative remedy procedure do not in and of themselves create liberty interest in access to that procedure).

[34] Insofar as plaintiff's Claim 6 could be construed to include a federal due process claim related to the alleged loss of property, such claim would fail. The due process clause normally requires a pre-deprivation hearing prior to loss of property or liberty resulting from established state procedures. See Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (1982). However, such a hearing cannot reasonably be required prior to loss resulting from the random, unauthorized act of a state employee. See Parratt v. Taylor, 451 U.S. 527, 543-44 (1981). In such a case, due process merely requires the availability of an adequate state post-deprivation remedy. See id. at 540-41. Virginia's Tort Claims Act waives sovereign immunity for damages resulting from the negligent and wrongful acts of a state employee who is acting within the scope of his employment. See Va. Code § 8.01-195.3. The Court of Appeals for the Fourth Circuit has held that the Virginia Tort Claims Act and Virginia's tort laws provide an adequate remedy. See Wadhams v. Procunier, 772 F.2d 75, 78 (4th Cir. 1985).

To the extent plaintiff believes he has an actionable claim under the Virginia Tort Claims Act, the court declines to exercise supplemental jurisdiction over such claim, pursuant to 28 U.S.C. § 1367(c)(3). See supra n.22.

[35] The court's review of the docket in this case indicates that it has been unable to complete service as to defendant Stanley, who is named in Claim 6. Accordingly, this defendant has not filed a motion in response to the complaint. Nonetheless, the court finds that the claims against this defendant must be dismissed. As the
(continued...)

38

## X. Conclusion

Based on the foregoing, the court will grant defendants' motions. The claims against three defendants upon whom the court has been unable to complete service will be dismissed, pursuant to 28 U.S.C. § 1915(e)(2), for failure to state a claim upon which relief may be granted. To the extent plaintiff's complaint could be construed to assert claims under state law, the court will decline, pursuant to 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over such claims, and will dismiss them without prejudice.[36]

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to all counsel of record for the defendants.

**ENTER:** This _31st_ day of September, 2007.

_____

United States District Judge

---

[35](...continued)
analysis above indicates, plaintiff failed to exhaust all available administrative remedies as required by 42 U.S.C. § 1997e(a). Moreover, plaintiff stated no specific facts regarding Officer Stanley and alleged no facts indicating that he had any involvement with or direct knowledge of events regarding plaintiff's allegedly missing property. Accordingly, plaintiff's claim against Officer Stanley offers nothing "more than labels and conclusions," Bell Atlantic Corp. v. Twombly, 127 S. Ct. at 1965, and so will be dismissed under 28 U.S.C. § 1915(e)(2) for failure to state a claim upon which relief may be granted.

[36] Plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

39